UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ONDREA STRONG, *et al.*,

      Plaintiffs,                       Case No. 25-12693

v.

                                    F. Kay Behm

METROPOLITAN LIFE INSURANCE      United States District Judge
COMPANY,

      Defendant.

_____/

**OPINION AND ORDER ON EXHAUSTION OF ADMINISTRATIVE
REMEDIES AND PLAINTIFF'S REQUEST FOR DISCOVERY (ECF No. 11)**

**I.      INTRODUCTION AND PROCEDURAL HISTORY**

In this ERISA denial of benefits appeal, Plaintiff claims that Defendant

wrongfully denied benefits under two Accidental Death and Dismemberment

(AD&D) life insurance policies governing the Decedent, Nicole C. Strong.

(ECF No. 1).  Before the court are two preliminary matters.  Defendant claims

that the court should dismiss the action with prejudice based on Plaintiff's

alleged failure to exhaust administrative remedies.  And Plaintiff asserts a

right to conduct discovery.  At a status conference held on November 21,

2025, the court directed the parties to brief these two issues, which they have

done.  (*See* ECF Nos. 11, 12, 13).  The court held a hearing on these matters

on June 24, 2026.  For the reasons set forth below, the court concludes that dismissal based on failure to exhaust administrative remedies is not warranted and that discovery is not appropriate in this case.

## II.   FACTUAL BACKGROUND

Nicole C. Strong died on February 4, 2023.  She had been an hourly employee of Ford Motor Company.  The death certificate, dated February 7, 2023, indicated that her death was the result of an "Accident," resulting from alleged medication abuse; "Diphenhydramine Toxicity," (Benadryl).  (ECF 11-1, Ex. A, Death Certificate).  During her employment, the Decedent secured group benefits that included two Accidental Death & Dismemberment (AD & D) policies.  (ECF No. 11-2, AD&D Policies).  After her death, her husband, Plaintiff Ondrea Strong, made a claim under these policies.  The claim was submitted on February 7, 2023, to the Plan Administrator for the underwriter of this group benefit package, Defendant Metropolitan Life Insurance Company.

On May 16, 2023 Defendant sent a denial letter.  (ECF No. 11-4, Ex. D).  Another denial letter was sent on September 17, 2023.  (ECF No. 11-5, Ex. E).  The former addressed the basic group AD&D policy claim, and the latter addressed the claim made under an optional, "Voluntary" AD&D policy.  The

2

letters were identical in reporting the basis for denial of Plaintiff's claim for benefits. Based on a death certificate and autopsy report, ECF No. 11-6, Ex. F, that identified the cause of death as Diphenhydramine (Benadryl) Toxicity, the Administrator cited laboratory results and a specific compilation of drug and chemical blood level data to support the determinations that:

> a) the late Mrs. Strong "voluntarily" sustained a lethal dose of Benadryl in excess of the amounts prescribed by her physician. Exhibits B, p. 2;

> b) Such intake was in violation of policy exclusions (under both policies) which bar coverage when loss results from a "voluntary" ingestion of a medicine other than as prescribed by a physician.

(ECF Nos. 11-4, 11-5).

The toxicology report from NMS labs of Horsham, Pennsylvania, dated 2/21/23, (ECF No. 11-7, Ex. G), was ordered by the autopsy prosecutor, Dr. Daniel Spitz, M.D. of the Macomb County Medical Examiner's Office. It provided that the blood level of Benadryl found in the specimen from the decedent measured 230 ng/ml (nanograms per milliliter). The Administrator reported their understanding that 230 ng/ml is the same thing as .23 ug/ml (micrograms per milliliter), and that Winek's Drug & Chemical Blood Level Data, 2001 reports that .23 ug/ml was within a "Lethal Range" of 5 ug/ml. (ECF No. 11-2, Ex. B, p. 2). According to Plaintiff, Winek's Drug & Chemical

Blood-Level Data 2001, (ECF No. 11-8, Ex. H), states at page 5 that the lethal level of Benadryl is greater than 8 ug/ml, which converts to 8,000 ng/ml. According to Plaintiff, the Administrator was wrong when they equated nanograms per milliliter with micrograms per milliliter, and a review of the data on p. 5 of Winek's reveals the clear error in concluding that there was a lethal dose of Benadryl in the blood sample.  Plaintiff maintains that the blood level of Benadryl reported by NMS labs (230 ng/ml), according to Winek's, was above the therapeutic range, but well below the toxic range (by 4770 ng/ml) and lethal levels (by 7770 ng/ml).  Plaintiff contends that, from this data, misunderstood by both the Administrator and the autopsy prosecutor, it was erroneously determined that the decedent's death was caused by Benadryl toxicity.  Plaintiff argues that the result is that the denial of benefits in this case, attributable to Benadryl blood levels that were not even toxic, much less lethal, was based on a demonstrable, mathematical error or a disregard of medical/scientific data.  Further, Plaintiff says the Plan Administrator assumed or inferred, without evidence, that the decedent ingested amounts in excess of her prescription "voluntarily."

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Federal law permits an individual covered under an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  "Every employee benefit plan covered by ERISA is required to 'afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.'" *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (quoting 29 U.S.C. § 1133).  Federal regulations set forth extensive minimum procedural requirements for benefits claims brought before a plan administrator. *Christoff v. Ohio N. Univ.*, No. 3:23-CV-1132, 2024 WL 4363165, at *4 (N.D. Ohio Sept. 30, 2024) (citing 29 C.F.R. § 2560.503-1).  As a result, "ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim."  *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005).

Defendant maintains that Plaintiff did not follow the claim exhaustion procedure set forth in the Summary Plan Description (SPD) and thus, has

failed to exhaust the administrative remedies set forth in the SPD, which then requires dismissal of Plaintiff's claim.  The SPD details the processes and procedures for the filing of claims by participants and beneficiaries, provides for a written notification procedure for denial or partial denial of claims, and provides for an appeal procedure for denied or partially denied claims.  (ECF No. 12-2, Exhibit A, pp. 186-188, 219-221).  Defendant further detailed its appeal procedures in two separate denial letters to Plaintiff dated May 18, 2023, and September 17, 2024.  (ECF No. 11-4, PageID.932-933).  Notably, however, the appeal process described in the SPD is not contained in the Plan documents contained in the Administrative Record.  The procedure for filing a claim set forth in the Plan documents is as follows:

**FILING A CLAIM**

**CLAIMS FOR ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE BENEFITS AND OPTIONAL ACCIDENT INSURANCE BENEFITS**

When there has been a Covered Loss, notify Us by calling 1-833-552-FORD(3673). This notice should be given to Us as soon as is reasonably possible but in any case within 20 days of the Covered Loss. The claim form will be sent to You or the beneficiary or beneficiaries of record.

The claim form should be completed and sent along with Proof of the Covered Loss to Us as instructed on the claim form. If You or the beneficiary have not received a claim form within 15 days of

6

giving notice of the claim, Proof may be sent using any form sufficient to provide Us with the required Proof.

The claimant must give us Proof no later than 90 days after the date of the Covered Loss.

If notice of claim or Proof is not given within the time limits described in this section, the delay will not cause a claim to be denied or reduced if such notice or Proof are given as soon as is reasonably possible.

When We receive the claim form and Proof, We will review the claim and, if We approve it, We will pay benefits subject to the terms and provisions of this certificate and the Group Policy. The benefit amount may be reduced by the amount of any due and unpaid contributions to premium outstanding at the time We make payment.

**Time Limit on Legal Actions.** A legal action on a claim may only be brought against Us during a certain period. This period begins 60 days after the date Proof is filed and ends 3 years after the date such Proof is required.

(ECF No. 10, PageID.591).

Thus, the claims review procedures that Defendant contends govern Plaintiff's claim are contained only  in the SPD and not in the Plan document. The present circumstances appear to be controlled by *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 887 (6th Cir. 2020).  In *Wallace*, the court rejected the defendant's argument that it was not required to include its claim procedures in its plan document because it detailed those procedures in its

7

benefits denial letter to the plaintiff. The court pointed out that "one of ERISA's central goals is to enable beneficiaries to learn their rights and obligations at any time," including before a denial of benefits, and Congress required plans to be "established and maintained pursuant to a written instrument" that enabled beneficiaries to determine those rights and obligations "on examining the plan documents." *Id*. at 887-88 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (further quoting citations omitted). In keeping with this intent, the court held "for a plan fiduciary to avail itself of this Court's exhaustion requirement, its underlying plan document must—at minimum—detail its required internal appeal procedures." *Id*. at 888. While the record in *Wallace* did not contain an SPD, the court pointed out that an SPD was just a summary and if it must include the claims review procedures, "then surely the plan it summarizes must also include those procedures." *Id*. The court concluded that because the defendant's plan document "fail[s] ... to establish or follow claims procedures consistent with the requirements of" ERISA, the court deemed the plaintiff's administrative remedies exhausted. *Id*. at 889 (citing 29 C.F.R. § 2560.503-1(l)). Plaintiff argues that this court too should deem his administrative remedies to have been exhausted. Here, however, the plan

8

document contains a claims procedure that Plaintiff seems to have followed and thus, the court concludes that Plaintiff's administrative remedies were exhausted.

The fact that the claims review process on which Defendant relies is contained in the SPD does not render it applicable under the circumstances of this case because statements in the SPD are not plan terms. In *CIGNA Corp. v. Amara*, the Supreme Court held that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but [ ] their statements do not themselves constitute the *terms* of the plan." 563 U.S. 421, 438 (2011) (emphasis in original). However, post-*Amara*, an SPD may constitute a binding document establishing the terms of a plan where the plan expressly incorporates the SPD, the plan allows a single document to function as both the plan and the SPD, or the SPD itself explicitly provides that it is part of the plan's terms. *Melton v. Minnesota Life Ins.*, No. 6:23-CV-174-REW-HAI, 2024 WL 4182699, at *5 (E.D. Ky. Sept. 13, 2024) (citing *Butler v. FCA US, LLC*, 706 F. App'x 256, 258 (6th Cir. 2017) ("A summary plan description can be part of a plan's governing instrument, but only if the summary itself so provides.") and *Bd. of Trs. v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015) ("Nothing in *Amara* prevents a document from

functioning both as the ERISA plan *and* as an SPD, if the terms of the plan so provide.")).  Based on the court's review of the plan document and the SPD, none of the circumstances described in *Melton* appear applicable here. Accordingly, the court can only conclude the claims review process outlined in the SPD does not govern Plaintiff's claim and Plaintiff was not required to file an administrative appeal in order to bring this action in federal court.

## IV.    DISCOVERY

Discovery generally is not permitted in an ERISA case and a district court may ordinarily review only the administrative record.  *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).  An exception exists, however, when evidence outside the record is offered to support "a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'" *Pearce v. Chrysler Group, L.L.C. Pension Plan*, 615 F. App'x 342, 350 (6th Cir. 2015) (quoting *Wilkins*, 150 F.3d at 619); *see also Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009).  In instances involving such challenges, evidence outside the record may be relevant and discoverable. *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485, 495 (S.D. Ohio 2018).  "Any discovery must be confined to the procedural

challenge that warrants the discovery, and evidence outside the record may be considered only insofar as it relates to the procedural challenge." *Id*. (citing *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006)).

A conflict of interest is a type of bias that may warrant additional discovery. *Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381, 389 (6th Cir. 2017). An inherent conflict of interest exists when a plan administrator serves the dual role of an ERISA plan administrator and payor of plan benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 113 (2008); *see also Morrison v. Regions Financial Corp.*, 941 F.Supp.2d 892, 903 (W.D. Tenn. 2013) ("The Sixth Circuit has held that an inherent conflict of interest arises when 'the same entity determines eligibility for benefits and also pays those benefits out of its own pocket.'"). To be entitled to such discovery, an ERISA claimant must first "provide sufficient evidence of bias—or of any procedural irregularity—to justify prehearing discovery . . . [A] mere allegation of bias is insufficient to throw open the doors of discovery in an ERISA case." *Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 486 (6th Cir. 2007). Even in a case involving an inherent conflict of interest where the claimant "ha[d] not set forth evidence establishing more than a mere allegation of bias based on the inherent conflict of interest[,] ... the district court did not abuse its discretion

11

in denying additional discovery." *Collins*, 682 F. App'x at 389.  Other cases suggest that no such threshold evidentiary showing of bias is required in cases where the defendant is both the administrator and the payor under an ERISA plan.  *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009).  Even so, discovery is not automatically available any time the defendant is both the administrator and the payor under an ERISA plan.  *Id.* Instead, "District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenged under *Wilkins*."  *Id.*

While Plaintiff mentions the inherent conflict of interest that Defendant has as payor and plan administrator, (ECF No. 11, PageID.824), the real focus of Plaintiff's discovery request is on conducting depositions of the Administrator and the Macomb County Medical Examiner, both of whom Plaintiff alleges misread or misunderstood the testing data, which "would result in admissions or other testimony making it all the more clear that gross mistakes in the understanding and application of data lead to an erroneous result."  *Id.* at PageID.823.  Plaintiff also suggests expert testimony might shed light on the errors committed.  That is, Plaintiff seeks discovery in order to buttress his position that the record contains no evidence to support the

12

conclusions that the Decedent had a lethal or even toxic level of Benadryl in her blood or that her blood samples revealed a "voluntary" ingestion of Benadryl at levels other than those prescribed by her treating physician. *Id*. Plaintiff argues that there is good cause to allow discovery and supplementation of the record where a prima facie case of error is so readily established.  But Plaintiff cites no authority from the Sixth Circuit in support of his claim that he can seek discovery on such topics and supplement the administrative record in this fashion.  *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485, 495 (S.D. Ohio 2018).  As explained in *Canter*, "[a]ny discovery must be confined to the procedural challenge that warrants the discovery, and evidence outside the record may be considered only insofar as it relates to the procedural challenge."  *Id*. (citing *Moore*, 458 F.3d at 430); *see also Wilkins,* 150 F.3d at 619 ("The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision.").  Here, Plaintiff does not connect the discovery sought to the procedural challenge of an inherent conflict of interest.  Accordingly, the court denies Plaintiff's request for discovery.

## V.    CONCLUSION

For the reasons set forth above, the court concludes that Plaintiff has exhausted his administrative remedies and that Plaintiff is not entitled to discovery.

The case is remanded to the Plan Administrator for Plaintiff to pursue an administrative appeal.  The court retains jurisdiction, but the case is stayed pending the administrative appeal.  The parties must file a written joint status report with the court within 90 days of entry of this order and every 90 days thereafter.  The parties must advise the court when the case is ready to proceed in this court.

**SO ORDERED**.

Date: July 8, 2026                                  s/F. Kay Behm
                                                    F. Kay Behm
                                                    United States District Judge